# Exhibit A

Electronically Filed by Superior Court of California, County of Orange, 12/31/2019 02:55:59 PM.
DAVID H. YAMASAKI, Clerk of the Court By Lirio Sanchez, Deputy Clerk. 30-2019-01121325-CU-BC-CJC ROA # 2

**CALLAHAN & BLAINE, APLC**
Daniel J. Callahan (Bar No. 91490)
Edward Susolik (Bar No. 151081)
Richard T. Collins (Bar No. 166577)
Damon D. Eisenbrey (Bar No. 215927)
Adrian L. Canzoneri (Bar No. 265168)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone: (714) 241-4444
Facsimile:  (714) 241-4445

Attorneys for Plaintiff DR Recovery Encinitas, LLC

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ORANGE

| | |
|---|---|
| DR RECOVERY ENCINITAS, LLC, a California limited liability company, | Case No.:  30-2019-01121325-CU-BC-CJC |
| | Judge Ronald L. Bauer |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. **BREACH OF WRITTEN CONTRACT** |
| | 2. **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING** |
| CIGNA CORPORATION, a Delaware corporation; | 3. **BREACH OF IMPLIED CONTRACT** |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, a Connecticut corporation; | 4. **BREACH OF ORAL CONTRACT** |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a Connecticut corporation; | 5. **PROMISSORY ESTOPPEL** |
| | 6. **QUANTUM MERUIT** |
| CIGNA BEHAVIORAL HEALTH, INC., a Minnesota corporation; | 7. **UNFAIR COMPETITION** |
| CIGNA BEHAVIORAL HEALTH OF CALIFORNIA, INC., a California corporation; | **DEMAND FOR JURY TRIAL** |
| CIGNA HEALTH MANAGEMENT, INC., a Delaware corporation; | |
| VIANT, INC., a Nevada corporation; | |
| MULTIPLAN, INC., a New York corporation; and | |
| DOES 1 through 25, inclusive, | |
| Defendants. | |

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1     Plaintiff DR Recovery Encinitas, LLC hereby alleges against Defendants Cigna

2    Corporation, a Delaware corporation, Cigna Health and Life Insurance Company, a Connecticut

3    corporation, Connecticut General Life Insurance Company, a Connecticut corporation, Cigna

4    Behavioral Health, Inc., a Minnesota corporation, Cigna Behavioral Health of California, Inc., a

5    California corporation, Cigna Health Management, Inc., a Delaware corporation, Viant, Inc., a

6    Nevada corporation, MultiPlan, Inc., a New York corporation, and Does 1 through 25, inclusive,

7    as follows:

8                       **THE PARTIES**

9      1.     Plaintiff DR Recovery Encinitas Recovery, LLC (TIN 47-1361036) ("Plaintiff") is,

10   and at all relevant times herein mentioned was, a California limited liability corporation qualified

11   to do business in the State of California.  Plaintiff is, and at all relevant times herein was, an

12   alcoholism and substance use disorder treatment provider with its principal place of business in

13   Orange County, California.  Plaintiff is in the profession of helping individuals recover from

14   alcoholism and addiction and return to their families and communities as productive and

15   contributing members of society.  Plaintiff is, and at all relevant times herein was, certified by the

16   California Department of Health Care Services ("DHCS") to operate an alcoholism and substance

17   use disorder treatment program.  Plaintiff at all relevant times herein has had a Centers for

18   Medicare and Medicaid Services ("CMS"), Clinical Laboratory Improvements Amendments

19   ("CLIA"), certificate of waiver, and at times relevant herein, Plaintiff was licensed by the

20   California Department of Public Health ("DPH") and accredited by the CMS and Commission on

21   Office Laboratory Accreditation ("COLA"), for the examination of materials derived from the

22   human body for the purpose of providing information for the diagnosis, prevention, and treatment

23   of human disease or impairment, and to determine, measure, or otherwise describe the presence or

24   absence of various substances or organisms in the body.

25      2.     Plaintiff is informed and believes, and based thereon alleges, Defendant Cigna

26   Corporation, is a Delaware corporation that conducts insurance operations throughout California,

27   representing to consumers that Cigna Corporation, together with its subsidiaries is a global health

28   service organization.  Cigna Corporation has license to use the federally registered service mark,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   "Cigna," markets and issues health insurance and insures, issues, administers and makes coverage

2   and benefit determinations, and develops and applies substance use disorder and mental health

3   treatment and laboratory services guidelines in making coverage and benefit determinations

4   related to the health care policies nationally through its various wholly-owned and controlled

5   subsidiaries, controlled agents and undisclosed principals and agents, including, but not limited to,

6   Defendants Cigna Health and Life Insurance Company, Connecticut General Life Insurance

7   Company, Cigna Behavioral Health, Inc., Cigna Behavioral Health of California, Inc., Cigna

8   Health Management, Inc., Viant, Inc., MultiPlan, Inc., and Does 1 through 25, inclusive under the

9   name of "Cigna."  Cigna Corporation is licensed and regulated by the California Department of

10  Insurance ("CDI") and the California Department of Managed Health Care ("CDMHC") to

11  transact the business of insurance in the State of California, is in fact transacting the business of

12  insurance in the State of California, and is thereby subject to the laws and regulations of the State

13  of California.

14          3.      Plaintiff is informed and believes, and based thereon alleges, Defendant Cigna

15  Health and Life Insurance Company (Cigna Health and Life) is a Connecticut corporation that

16  conducts insurance operations throughout California.  Cigna Health and Life markets and issues

17  health insurance and insures, issues, administers and makes coverage and benefit determinations,

18  and develops and applies substance use disorder and mental health treatment and laboratory

19  services guidelines in making coverage and benefit determinations related to the health care

20  policies at issue in this action.  Cigna Health and Life is licensed and regulated by the CDI and the

21  CDMHC to transact the business of insurance in the State of California, is in fact transacting the

22  business of insurance in the State of California, and is thereby subject to the laws and regulations

23  of the State of California.

24          4.      Plaintiff is informed and believes, and based thereon alleges, Defendant

25  Connecticut General Life Insurance Company ("Connecticut General") is a Connecticut

26  corporation that conducts insurance operations throughout California.  Connecticut General

27  markets and issues health insurance and insures, issues, administers and makes coverage and

28  benefit determinations, and develops and applies substance use disorder and mental health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 3 -
COMPLAINT

1   treatment and laboratory services guidelines in making coverage and benefit determinations

2   related to the health care policies at issue in this action.  Connecticut General is licensed and

3   regulated by the CDI and the CDMHC to transact the business of insurance in the State of

4   California, is in fact transacting the business of insurance in the State of California, and is thereby

5   subject to the laws and regulations of the State of California.

6          5.      Plaintiff is informed and believes, and based thereon alleges, Defendant Cigna

7   Behavioral Health, Inc. ("Cigna Behavioral Health") is a Minnesota corporation that conducts

8   insurance operations throughout California.  Cigna Behavioral Health markets and issues health

9   insurance and insures, issues, administers and makes coverage and benefit determinations, and

10  develops and applies substance use disorder and mental health treatment and laboratory services

11  guidelines in making coverage and benefit determinations related to the health care policies at

12  issue in this action.  Cigna Behavioral Health is licensed and regulated by the CDI and the

13  CDMHC to transact the business of insurance in the State of California, is in fact transacting the

14  business of insurance in the State of California, and is thereby subject to the laws and regulations

15  of the State of California.

16         6.      Plaintiff is informed and believes, and based thereon alleges, Defendant Cigna

17  Behavioral Health of California, Inc. ("Cigna Behavioral Health CA") is a California corporation

18  that conducts insurance operations throughout California.  Cigna Behavioral Health CA markets

19  and issues health insurance and insures, issues, administers and makes coverage and benefit

20  determinations, and develops and applies substance use disorder and mental health treatment and

21  laboratory services guidelines in making coverage and benefit determinations related to the health

22  care policies at issue in this action.  Cigna Behavioral Health CA is licensed and regulated by the

23  CDI and the CDMHC to transact the business of insurance in the State of California, is in fact

24  transacting the business of insurance in the State of California, and is thereby subject to the laws

25  and regulations of the State of California.

26         7.      Plaintiff is informed and believes, and based thereon alleges, Defendant Cigna

27  Health Management, Inc. ("Cigna Health Management") is a Delaware corporation that conducts

28  insurance operations throughout California.  Cigna Health Management markets and issues health

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 4 -
COMPLAINT

1    insurance and insures, issues, administers and makes coverage and benefit determinations, and

2    develops and applies substance use disorder and mental health treatment and laboratory services

3    guidelines in making coverage and benefit determinations related to the health care policies at

4    issue in this action.  Cigna Health Management is licensed and regulated by the CDI and the

5    CDMHC to transact the business of insurance in the State of California, is in fact transacting the

6    business of insurance in the State of California, and is thereby subject to the laws and regulations

7    of the State of California.

8           8.     Plaintiff is informed and believes, and based thereon alleges, Defendant Viant Inc.

9    ("Viant") is a Nevada corporation that conducts insurance operations throughout California.  Viant

10   provides health care payment solutions and offers auditing and reimbursement of behavioral health

11   and substance use disorder claims and costs, as well as prepayment services such as treatment

12   facility bill review and professional negotiation, on policies insured or administered by

13   Defendants.  Viant is licensed and regulated by the CDI and the CDMHC to transact the business

14   of insurance in the State of California, is in fact transacting the business of insurance in the State

15   of California, and is thereby subject to the laws and regulations of the State of California.

16          9.     Plaintiff is informed and believes, and based thereon alleges, Defendant MultiPlan,

17   Inc. ("MPI") is a New York corporation which conducts insurance operations throughout

18   California and at all times relevant herein, operated as and controlled its subsidiary NCN, LLC,

19   which does business as National Care Network.  MPI is a provider of healthcare cost management

20   solutions, specializing in providing claim cost management solutions for controlling the financial

21   risks associated with health care bills on policies insured or administered by Defendants.  MPI

22   also offers preferred provider organization network solutions for accessing hospitals, ancillary care

23   facilities, treatment facilities, and health care professionals for the benefit and at the control and

24   direction of Defendants.  MPI is licensed and regulated by the CDI and the CDMHC to transact

25   the business of insurance in the State of California, is in fact transacting the business of insurance

26   in the State of California, and is thereby subject to the laws and regulations of the State of

27   California.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 5 -
COMPLAINT

10.     Plaintiff does not know the true names and capacities of Defendants sued as Does 1 through 25, inclusive, and therefore sues such Defendants with such fictitious names. Plaintiff will amend this Complaint, if necessary, to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the named and fictitiously named Defendants are involved in and responsible for the events, transactions and occurrences alleged in the Complaint, as well as the alleged damages caused to Plaintiff.

11.     Plaintiff is informed and believes that, at all relevant times, each of the Defendants was and is the principal, agent, servant, representative, undisclosed principal, undisclosed agent or alter ego of each of the other Defendants, and in doing the things herein alleged, each of the Defendants was acting in the scope of its authority as such principal, agent, servant, representative, undisclosed principal, undisclosed agent or alter ego, and with the permission and consent of each of the other Defendants.

12.     Plaintiff is informed and believes that, at all relevant times, Defendants are the alter egos of the other Defendants, have comingled assets, have comingled business operations, have undercapitalized operations, have ignored corporate formalities, and have exercised such dominion and control over the operations of the other Defendants that it would be unjust to permit such Defendants to avoid individual liability. Plaintiff is further informed and believes, and based thereon alleges, that a unity of interest and ownership exists between Defendants, that any individuality and separateness between Defendants have ceased, and that Defendants are the alter egos of one another. On information and belief, Plaintiff understands and believes that Defendants share the same common ownership, places of business, managements, and operate as a single enterprise.

13.     Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants formed and operated a conspiracy with each of the other Defendants to perform the acts alleged herein, in furtherance of a common design to place profits over patients and damage substance use disorder treatment providers, including Plaintiff, and with knowledge that the conduct alleged herein of each of the Defendants constituted violations of law and provided

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    substantial assistance or encouragement to each other to so act against insured patients and

2    substance use disorder treatment providers, including Plaintiff.

3                                    **BRIEF STATEMENT OF THE CASE**

4           14.     Plaintiff is an out-of-network alcoholism and substance use disorder treatment

5    provider.  Plaintiff is in the profession of helping individuals recover from alcoholism and

6    addiction and return to their families and communities as productive and contributing members of

7    society.  Plaintiff provided verified, preauthorized and covered substance use disorder and mental

8    health treatment and laboratory services to 31 individuals with health insurance that was marketed,

9    sold, insured and/or administered by Defendants.  The policies pay benefits for out-of-network

10   substance use disorder and mental health treatment at all levels of care, including, but not limited

11   to, detoxification and residential treatment, partial hospitalization ("PHP"), intensive outpatient

12   ("IOP"), outpatient treatment ("OP"), counseling and behavioral therapies, and clinical laboratory

13   services, at seventy percent (70%) of covered charges (minus any cost-sharing amounts) until the

14   deductible/out-of-pocket maximum is met at which time Defendants pay one hundred percent

15   (100%).

16          15.     Plaintiff obtained a written assignment of benefits from each of the 31 patient-

17   insureds at issue, by which Defendants' insureds intended to, and did, assign to Plaintiff not only

18   rights to payment of claims but to assert all rights and causes of action against Defendants in

19   connection with such claims.  Moreover, Plaintiff confirmed with Defendants through the required

20   verification of benefits process and, if necessary, the preauthorization process, that each of the

21   patient-insureds and their respective treatment and services were covered by health insurance

22   policies issued, insured and/or administered by Defendants.  At all times relevant herein,

23   Defendants knew that Plaintiff was treating – and would continue to treat – Defendants'

24   insureds/members, and that Plaintiff was not treating Defendants' insureds/members for free.

25          16.     Defendants were obligated – under the law and the policies – to pay Plaintiff 70%

26   of its billed charges (minus any cost-sharing amounts) for the mental health and substance use

27   disorder treatment and laboratory services that Plaintiff rendered to Defendants'

28   insureds/members, all 31 of them, until the deductible/out-of-pocket maximum is met at which

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   time Defendants pay 100%.  Defendants also advised and confirmed with Plaintiff during the

2   verification of benefits process for each of the 31 insureds at issue herein, that the out-of-network

3   policy benefits paid by Defendants to out-of-network treatment providers, like Plaintiff, for all

4   levels of substance use disorder and mental health treatment and laboratory services is 70% of

5   covered expenses (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum

6   is met at which time Defendants pay 100%.

7        17.     Instead of paying Plaintiff per the policies and the law and in accordance with

8   Defendants' agreements and representations to Plaintiff, Defendants engaged in unfair,

9   unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with

10  an emphasis on profits over patients – and paid Plaintiff a mere 20.28% of its billed charges for

11  the substance use disorder and mental health treatment and laboratory services rendered to

12  Defendants' insureds/members.  It was only after Plaintiff rendered the mental health and

13  substance use disorder treatment and laboratory services at issue that Defendants breached the

14  policies, violated the law, reneged on their promises and representations to Plaintiff and refused to

15  properly compensate Plaintiff for the treatment and services rendered to Defendants'

16  insureds/members.

17       18.     During the claim submission and payment process, Defendants put Plaintiff on

18  various pre-payment review and program integrity audits, and through their various departments,

19  Defendants repeatedly requested the same documents and information from Plaintiff, over and

20  over again.  Plaintiff complied with Defendants' repetitive requests and despite being released

21  from the audits and promised payment pursuant to the policies – and in some cases repricing

22  agreements – Defendants refused to properly reimburse Plaintiff for the mental health and

23  substance use disorder treatment and laboratory services that Plaintiff provided to Defendants'

24  insureds/members.  Defendants' audits, repetitive document and information requests and

25  promises of payment to Plaintiff were false and fraudulent and were implemented by Defendants,

26  and each of them, as a pretext to illegally and fraudulently delay and deny Plaintiff (and hundreds

27  of other substance use disorder treatment centers and laboratory providers) payment in accordance

28  with the law and policies.

19.     As a result, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the policies in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, and moreover, Plaintiff is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them, for their misconduct and bad faith business and insurance practices.

## AMERICA'S OPIOID AND ADDICTION EPIDEMIC

20.     Now, as never before, there is a critical need for access to treatment for substance use disorders.  The Substance Abuse and Mental Health Services Administration (SAMHSA) estimates that in 2014, 20.2 million adult Americans, or 8.4 percent of the adult population suffered from a substance use disorder within the past year.[1]  According to the President's Commission on Combatting Drug Addiction and the Opioid Crisis (November 2017), heroin overdose deaths increased four-fold from 2010 to 2015, while overdose deaths due to prescription opioids consistently outpaced even the disturbingly high heroin overdose rates.[2]  Drug overdoses now cause more deaths than either car accidents or guns, and those suffering from substance use disorders are at the highest risk.

21.     On average, 130 Americans die every day from an opioid overdose.  The opioid crisis has and continues to destroy lives and devastate families and communities.[3]  It is the deadliest drug crisis in United States history and it is only getting worse.[4]  In 2017 alone,

---

[1] *See* Rachel N. Lipari & Struther L. Van Horn, Trends in Substance Use Disorders in Adults 18 and Older (June 29, 2017), retrieved on May 23, 2019 from https://www.samhsa.gov/data/sites/default/files/report_2790/ShortReport-2790.html.

[2] *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at p. 32, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf.

[3] *See* Centers for Disease Control and Prevention, Understanding the Epidemic, retrieved on May 28, 2019 from https://www.cdc.gov/drugoverdose/epidemic/index.html.

[4] *See* California Department of Public Health, Patterns of Opioid-Related Overdose Deaths in California, 2011-2017 (March 2019), retrieved on June 12, 2019 from https://www.cdph.ca.gov/Programs/CCDPHP/DCDIC/SACB/CDPH%20Document%20Library/Prescription%20Drug%20Overdose%20Program/Injury%20Data%20Brief%20Opioid%20Overdose%20Deaths%202011-2017_ADA.pdf.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

California lost 2,196 lives to the opioid epidemic.   Timely access to life-sustaining and life-saving treatment and continuing care for substance use and mental health disorders is critical to preventing these deaths and allowing people to achieve long-term recovery and to return to their families, friends and communities as healthy, productive and contributing members of society.[5]

22.     Addiction is recognized as a chronic, relapsing brain disorder characterized by compulsive drug seeking, continued use despite harmful consequences, and long-lasting changes in the brain.  Addiction is considered both a complex brain disorder and a mental illness.  The brain changes can be long lasting and can lead to many harmful, often self-destructive, behaviors.  Addiction is the most severe form of a full spectrum of substance use disorders, and is a medical illness caused by repeated misuse of a substance or substances.[6]  Without treatment and engagement in recovery activities, addiction is progressive and can result in unemployment, homelessness, disability and premature death.

23.     Substance use disorder treatment is difficult and the challenges of recovery from addiction are many, which can involve cycles of recurrence and remission before long-term recovery is realized.  Timely access to treatment and continuing care, including detoxification and residential treatment, intensive outpatient and outpatient services, counseling and behavioral therapies, social support and supportive sober living environments, are critical for people to recover from addiction and reclaim active and meaningful lives.  Clinical laboratory services are

---

[5]  The human impact of the opioid epidemic – from babies born dependent, the emotional toll on individuals with a substance use disorder, and that of their families and communities, to the tens of thousands of lives cut short each year – has been tremendous.  Now, reports show that the economic impact has been just as shocking, with the drug crisis costing the U.S. economy $1 trillion since 2001 and likely to cost the economy an additional $500 billion by 2020 if the current rates of addiction and overdose remain steady.  *See* Altarum, Solutions to Advance Health: Economic Toll of Opioid Crisis in U.S. Exceeded $1 Trillion Since 2001 (February 13, 2018), retrieved on June 5, 2019 from https://altarum.org/news/economic-toll-opioid-crisis-us-exceeded-1-trillion-2001.

[6]  *See* National Institute of Drug Addiction, The Science of Drug Use and Addiction: The Basics, retrieved on May 29, 2019 from https://www.drugabuse.gov/publications/media-guide/science-drug-use-addiction-basics; *see also*, American Society of Addiction Medicine, Public Policy Statement: Definition of Addiction, retrieved on June 13, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1definition_of_addiction_long_4-11.pdf?sfvrsn=a8f64512_4.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 10 -
COMPLAINT

recognized as an appropriate and important diagnostic procedure in substance use disorder and mental health treatment as such services promote prevention, diversion, early detection, and lifelong recovery from addiction.  Such testing is designed to provide accurate results that help physicians and treatment clinicians create a scientifically designed drug monitoring strategy for optimal treatment outcomes, which includes testing for accurate prescription therapy and medication assisted treatment.[7]

24.    Families and individuals purchase health insurance to help cover the costs of health care, including the costs of substance use disorder and mental health treatment.  Health insurance is supposed to provide people and families with peace of mind and security, and provide them with access and options for life-sustaining and life-saving health care while preventing families and individuals from experiencing financial crises, such as bankruptcy or home foreclosure, or being forced to choose between paying for rent, utilities and food or paying for necessary health care costs.

25.    Traditionally, insurers and employers have covered treatment for mental health conditions, including substance use disorders, less favorably than treatment for physical health conditions, including higher cost-sharing obligations for patients, more restrictive limits on the number of inpatient days and outpatient visits, and more onerous prior authorization requirements. To address this unequal treatment, Congress first passed a mental health parity law in 1996, and many states followed suit in the following decade by passing laws of their own.  Among other limitations, however, the 1996 act did not address the treatment of substance use disorders. Congress addressed this gap in passing the historic Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA), 42 U.S.C. § 300gg-26, which, among other things, prohibits most plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., from imposing different treatment limits, cost-sharing and in-network and out-of-network coverage on mental health and substance use disorder

---

[7] *See* American Society of Addiction Medicine, Public Policy Statement on Drug Testing as a Component of Addiction Treatment and Monitoring Programs and in other Clinical Settings, retrieved on May 29, 2019 from https://www.asam.org/docs/default-source/public-policy-statements/1drug-testing---clinical-10-10.pdf.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    treatment than are imposed on other medical and surgical services.[8]  Furthermore, ERISA requires

2    fiduciaries to act solely in the interests of plan participants and beneficiaries, and to decide claims

3    for health care benefits in accordance with plan documents and under a full and fair procedure.

4         26.    The Patient Protection and Affordable Care Act of 2010 ("PPACA"), 42 U.S.C. §§

5    18001, *et seq.*, also known as the Affordable Care Act or Obamacare, requires a range of health

6    polices, both inside and outside of the exchanges, to provide a core package of essential health

7    benefits including mental health and substance use disorder services and laboratory services.  42

8    U.S.C. § 18022.  The PPACA extends the impact of the MHPAEA so that many health policies

9    must offer coverage for mental health and substance use disorder services and laboratory services

10   with at least an equal level of benefits as the policies offer for the treatment of medical and

11   surgical benefits.  However, as President Donald J. Trump's commission on the opioid crisis wrote

12   in its November 2017 report, "health insurers are not following the federal law requiring parity in

13   the reimbursement for mental health and addiction [;] [t]hey must be held responsible."[9]

14   **DEFENDANTS' SCHEME TO DENY ACCESS AND COVERAGE FOR CRITICALLY-**

15   **NEEDED SUBSTANCE USE DISORDER TREATMENT**

16        27.    Despite the above statutory requirements, and the obvious individual and public

17   health interests in timely access to and coverage for substance use disorder and mental health

18   treatment and laboratory services, Defendants, and each of them and their controlled agents and/or

19   undisclosed principals, are engaged in unfair, unreasonable, incomplete, fraudulent and systematic

20   policies, practices and decisions (against the substance use disorder treatment profession as a

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

---

[8]  California has its own Mental Health Parity Act ("MHPA"), codified in Insurance Code section 10144.5 and Health and Safety Code section 1374.72, which, like the MHPAEA, requires mental health care coverage to be provided "under the same terms and conditions applied to other medical conditions."  California law also requires health care plans to "provide all covered mental health and substance use disorder benefits in compliance with the [MHPAEA] and all rules, regulations, and guidance issued" pursuant to federal laws.  Cal. Ins. Code §§ 10144.4, 10112.27; Cal. Health & Safety Code § 1374.76.

[9]  *See* President's Commission on Combatting Drug Addiction and the Opioid Crisis, Final Report, at pp. 9 and 122, retrieved on May 23, 2019 from https://www.whitehouse.gov/sites/whitehouse.gov/files/images/Final_Report_Draft_11-15-2017.pdf.  Roster of Commissioners include Governor Chris Christie, Chairman, Governor Charlie Baker, Governor Roy Cooper, Congressman Patrick J. Kennedy, Professor Bertha Madras, Ph.D., Florida Attorney General Pam Bondi.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

whole and Defendants' members/insureds in need of substance use disorder treatment) that have and continue to result in the unlawful and fraudulent denial, underpayment, delay and/or flat-out refusal to authorize and decide access, coverage and claims for mental health and substance use disorder treatment and laboratory services for patients whose policies promise, and the law requires, access to and coverage for such services and benefits.  Defendants' systematic practices have and continue to result in restrictive prior authorization requirements and restrictive limits on the number of substance use disorder treatment days and tests.  Defendants' access, coverage and claims-handling policies, practices and decisions are imposing unlawful barriers between patients and life-saving substance use disorder treatment they desperately need.  And Defendants are doing this in the middle of an opioid and addiction epidemic!  Defendants' impermissible barriers to substance use disorder treatment and laboratory services must be removed and Defendants must be held responsible for placing profits over patients in a life and death situation.

28.     Defendants' substance use disorder and mental health treatment and laboratory access, coverage and claims-handling policies, practices and decisions as a whole violate the law and the policy documents.  For instance, Plaintiff is informed and believes, and based thereon alleges, that Defendants unreasonably limit the number of detoxification and residential treatment days, and impermissibly and unreasonably require preauthorization for PHP, IOP and OP treatment and then limit the number of treatment days at each level of care.[10]  Plaintiff is also informed and believes, and based thereon alleges, that Defendants reimburse detoxification and residential treatment, PHP and IOP levels of care at nominal percentages of the covered charges.  Plaintiff is further informed and believes, and based thereon alleges, that Defendants refuse to

_____

[10]  Under California law, once a health insurer authorizes a specific type of treatment covered under a plan and the provider has provided that treatment in good faith and pursuant to the authorization, the insurer cannot rescind or modify that authorization for any reason.  Cal. Ins. Code § 796.04; Cal. Health & Safety Code § 1371.8. Moreover, California law requires that where health insurers cannot provide their members/insureds access to needed health care providers on an "in-network" basis, the insurers shall pay any "out-of-network" provider the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its billed charges.  Cal. Ins. Code § 10133.5; Cal. Code Regs. tit. 10, § 2240.1. Further, health insurers are required to reimburse health care providers at almost 100 percent of the billed charges for emergency services.  Cal. Ins. Code § 10112.7; Cal. Health & Safety Code § 1317; Cal. Code Regs., tit. 28, § 1300.67.

1 reimburse OP claims and refuse to reimburse claims for breathalyzer tests, counseling services and

2 services of treatment case managers.  Moreover, Plaintiff is informed and believes, and based

3 thereon alleges, that Defendants utilize illegal and overly restrictive medical necessity criteria and

4 guidelines in order to deny claims and profit over the health and safety of their members/insureds.

5 Further, Plaintiff is informed and believes, and based thereon alleges, that Defendants place

6 providers into unnecessary and repetitive audits and demand repetitive and already provided

7 documents from providers in order to improperly delay payment on and/or deny claims.  In

8 addition, Plaintiff is informed and believes, and based thereon alleges, that Defendants refuse to

9 pay for clinical laboratory claims as either beyond the numerical limitation and/or simply not

10 covered or reimbursable.  Plaintiff is also informed and believes, and based thereon alleges, that

11 Defendants make payments on claims based on inapplicable Medicare rates and demand refunds

12 on other claims that it asserts should have been paid at inapplicable Medicare rates.[11]

13      29.     Plaintiff is informed and believes, and based thereon alleges, that Defendants'

14 objective is to deny their members/insureds access to and coverage for critically-needed substance

15 use disorder detoxification and residential treatment, limit the number of authorized detoxification

16 and residential treatment days, limit the number of authorized PHP, IOP and OP substance use

17 disorder treatment days, rush their members/insureds into OP substance use disorder treatment,

18 refuse to reimburse OP claims, deny and/or underpay all other substance use disorder and mental

19 health treatment and laboratory claims, and then demand refunds on paid claims and subject the

20 remaining claims to improper and inapplicable Medicare rates, all in violation of the law and the

21 policy documents and to the detriment of their members/insureds in need of life-saving substance

22 use disorder treatment and to the detriment of substance use disorder treatment centers and

23 laboratory providers, like Plaintiff.

24

25

---

26 [11]  The California Department of Insurance found and concluded in its July 23, 2018 Order to

27 Show Cause *In the Matter of the Certificate of Authority of Health Net Life Insurance Company* (CDI File No. UPA-2016-00005), that Medicare does not provide a rate for inpatient or outpatient

28 substance use disorder treatment provider charges and that substituting a bundled per diem Medicare rate for such treatment charges violates state and federal parity laws.

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

**DEFENDANTS' SCHEME SPECIFIC TO PLAINTIFF**

30.     Plaintiff is an out-of-network alcoholism and substance use disorder treatment provider.  Plaintiff is in the profession of helping individuals recover from alcoholism and addiction and return to their families and communities as productive and contributing members of society.  Plaintiff provided verified, preauthorized and covered mental health and substance use disorder treatment and laboratory services to 31 individuals with health insurance that was sold, insured and/or administered by Defendants.  The policies pay benefits for out-of-network substance use disorder and mental health treatment and laboratory services at 70% of covered charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.

31.     Plaintiff obtained a written assignment of benefits from each of the 31 patient-insureds at issue, by which Defendants' insureds/members intended to, and did, assign to Plaintiff not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  Moreover, Plaintiff confirmed with Defendants through the required verification of benefits process and, if necessary, the preauthorization process, that each of the patient-insureds and their respective treatments were covered by health insurance policies issued and/or administered by Defendants.  At all times relevant herein, Defendants knew that Plaintiff was treating – and would continue to treat – Defendants' insureds/members, and that Plaintiff was not treating Defendants' insureds/members for free.

32.     The treatment and claim documents concerning each of the subject 31 patient-insureds treated by Plaintiff contain personal health and treatment information protected by law from public disclosure pursuant to, *inter alia*, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  Once a Protective Order is in place, Plaintiff will produce its claims data report to Defendants.  The report will set forth the subject patient's initials and member identification number, the service start and end dates, the amounts billed and paid, and the outstanding balance.  Plaintiff is informed and believes that with Plaintiff's company name and TIN, Defendants can access a trove of information on each of Plaintiff's patients, including, but not limited to, the patient's name, date of birth, gender, family relationships, name and type of

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    insurance plan/policy and state of issuance, dates of coverage, dates of service, types and levels of

2    care provided, billed amounts claimed, explanations of benefits paid or denied, and appeals and

3    grievances regarding claims denied.  Plaintiff is informed and believes that the information

4    available to Defendants through Plaintiff's company name and TIN is sufficient enough to apprise

5    Defendants of the substance of Plaintiff's claims.

6         33.    Defendants were obligated – under the law and the policies – to pay Plaintiff 70%

7    of its billed charges (minus any cost-sharing amounts) for the mental health and substance use

8    disorder treatment and laboratory services that Plaintiff rendered to Defendants'

9    insureds/members, all 31 of them, until the deductible/out-of-pocket maximum is met at which

10   time Defendants pay 100%.  Defendants also advised and confirmed with Plaintiff during the

11   verification of benefits process for each of the 31 insureds at issue herein, that the out-of-network

12   policy benefits paid by Defendants to out-of-network treatment providers, like Plaintiff, for all

13   levels of substance use disorder and mental health treatment and laboratory services is 70% of

14   covered expenses (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum

15   is met at which time Defendants pay 100%.

16        34.    Instead of paying Plaintiff per the policies and the law and in accordance with

17   Defendants' agreements and representations to Plaintiff, Defendants engaged in unfair,

18   unreasonable, illegal, incomplete, fraudulent and systematic polices, practices and decisions – with

19   an emphasis on profits over patients – and paid Plaintiff a mere 20.28% of its billed charges for

20   the treatment rendered to Defendants' insureds/members.  It was only after Plaintiff rendered the

21   substance use disorder and mental health treatment and laboratory services at issue that

22   Defendants breached the polices, violated the law, reneged on their payment promises and

23   representations to Plaintiff and refused to properly compensate Plaintiff for the treatment and

24   services rendered to Defendants' insureds/members.

25        35.    During the claim submission and payment process, Defendants put Plaintiff on

26   various pre-payment review and program integrity audits, and through their various departments,

27   Defendants repeatedly requested the same documents and information from Plaintiff, over and

28   over again.  Plaintiff complied with Defendants' repetitive requests and despite being released

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

COMPLAINT

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

from the audits and promised payment pursuant to the policies – and in some cases repricing agreements – Defendants refused to properly reimburse Plaintiff for the substance use disorder and mental health treatment and laboratory services that Plaintiff provided to Defendants' insureds/members.  Defendants' audits, repetitive document and information requests and promises of payment to Plaintiff were false and fraudulent and were implemented by Defendants, and each of them, as a pretext to illegally and fraudulently delay and deny Plaintiff (and hundreds of other substance use disorder treatment providers) payment in accordance with the law and policies.

36.     As a result, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, including the benefits owed under the policies in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, and moreover, Plaintiff is entitled to injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants, and each of them.

37.     Defendants' conduct has had a severe and adverse effect on not only Plaintiff, but also on Defendants' insureds/members and the substance use disorder treatment profession as a whole.  Defendants' conduct has placed the lives of their insureds/members that are struggling with addiction in jeopardy, exposing the insured/member patients and their families to significant financial and health risk, while simultaneously destroying or significantly damaging Plaintiff and all similarly situated substance use disorder and mental health treatment providers.

38.     Defendants' conduct breached agreements with Plaintiff which arose when Plaintiff's patients assigned benefits to Plaintiff in writing, and when Defendants confirmed coverage and, when necessary, gave prior approval for the substance use disorder and mental health treatment and laboratory services that Plaintiff provided to Defendants' insureds/members. Defendants' violated the implied covenant of good faith and fair dealing in said insurance contracts, rendering its actions in "bad faith."

39.     Upon information and belief, Plaintiff alleges that Defendants' conduct was wanton and willful, and undertaken to improve their balance sheet by placing profits over patients in a life and death situation.

COMPLAINT

40.     Defendants' practices were also unfair, fraudulent and unlawful under California's Unfair Competition Law ("UCL") in that, as a part of their scheme to not pay or underpay Plaintiff, and to prevent Plaintiff from learning of their scheme for as long as possible, they violated their claims handling obligations under California law by providing either no, baseless, false, or dilatory reasons for not paying or underpaying Plaintiff.  Plaintiff is thereafter entitled to injunctive relief and restitution under the UCL.

41.     Defendants' practices were similarly unfair, fraudulent and unlawful under state and federal law in that they violate the MHPAEA, while simultaneously constituting common law bad faith.  The MHPAEA is an antidiscrimination statute intended to ensure that coverage of mental health and substance abuse care and related laboratory services (such as Plaintiff provides) is in "parity" with coverage of medical and surgical care.  Defendants, and each of them, have systematically treated substance use disorder treatment and behavioral health treatment providers differently than medical and surgical providers in California.

42.     Defendants' practices were likewise unfair, fraudulent and unlawful under state and federal law in that they violate the PPACA, which requires, among other things, insurers to provide benefits for substance use disorder and mental health treatment and laboratory services, with no pre-existing condition exclusions and no annual or lifetime dollar amount limits on coverage of such treatment and services.

43.     Defendants' actions were further unfair, fraudulent and unlawful in that they violated other well established public policies, including those set forth in the California Unfair Insurance Practices Act ("UIPA"), as set forth in California Insurance Code sections 790, *et seq*.

44.     Defendants' insureds/members were also unlawfully, unfairly and fraudulently misled into believing that the insurance policies at issue would provide coverage for care supplied by out-of-network substance use disorder treatment centers and laboratory providers such as Plaintiff.

45.     Defendants, and each of them, never intended to provide the coverage mandated by the insurance policies issued and/or administered for the benefit to their insureds/members and instead intended to not pay or to underpay substance use disorder treatment centers and laboratory

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   providers throughout California, including Plaintiff.  Defendants, and each of them, have ignored

2   Plaintiff's efforts to recover payment for the substance use disorder and mental health treatment

3   and laboratory services provided to Defendants' insureds/members, placing Plaintiff in the

4   untenable position of being forced to file this Complaint in order to recover payment from

5   Defendants, and each of them, under the insurance policies at issue and the law.

6        46.    Plaintiff is seeking relief under its direct rights, written assigned rights from

7   patients cheated out of their insurance benefits by Defendants, and as third-party beneficiaries of

8   its patients' policies issued and/or administered by Defendants.

9        47.    Defendants have also tortuously breached the implied covenant of good faith and

10   fair dealing in the underlying policies issued and/or administered by Defendants, which rights

11   have been assigned to Plaintiff.

12        48.    The substance use disorder and mental health treatment and laboratory services at

13   issue herein were provided by Plaintiff to patients who at all relevant times had health insurance

14   for the treatment and services that Plaintiff provided and the policies of health insurance were

15   issued and/or administered by Defendants, and each of them, or at the direction and under the

16   control of Defendants.

17        49.    Defendants, and each of them, caused the events complained of herein to occur in

18   the County of Orange and throughout the State of California.

19        50.    Plaintiff provides substance use disorder and mental health treatment and

20   laboratory services to individuals in the process of recovering from alcoholism and substance

21   abuse.  Plaintiff's treatment includes a range of services, including PHP, IOP, OP, counseling,

22   behavioral therapies, case management services, and clinical laboratory services.

23        51.    Defendants, and each of them, developed, marketed, insured and/or sold the subject

24   health insurance policies to include coverage for substance use disorder and mental health

25   treatment and laboratory services provided to their insureds/members by in-network providers

26   ("INP") and out-of-network ("ONP") like Plaintiff.

27        52.    The insurance policies issued and/or administered by Defendants, and each of

28   them, are industry standard indemnity health insurance policies that provide richer benefits (less

- 19 -

COMPLAINT

out-of-pocket expense for insureds) for treatment and services that are obtained from INPs.  Such providers contract with Defendants to become part of their "network" and generally agree to accept a set reduced rate of reimbursement in exchange for steerage of patients to INP practices or facilities and payment within specified contractual timeframes.

53.     The insurance policies issued and/or administered by Defendants, and each of them, provide for a reimbursement rate for ONP services at a lesser percentage of the overall billed charges than the 100% reimbursement rate for INP services, less the insured's co-pay, co-insurance and deductible, generally resulting in greater out-of-pocket expenses for Defendants' insureds.

54.     California law requires that the policy forms, such as those utilized in the insurance policies issued and/or administered by Defendants, and each of them, be filed with and approved by the CDI, and are generally not to be withdrawn from the insurance marketplace without an insurer meeting specific conditions.

55.     The insurance policies issued and/or administered by Defendants, and each of them, provide coverage for but not limited to the following ONP substance use disorder treatment services: outpatient office visits (psychological evaluation or therapeutic session in an office or other outpatient setting (including individual and group therapy sessions, medication management and drug therapy monitoring); outpatient services other than office visits (psychological and neuropsychological testing, intensive outpatient care program, day treatment, partial hospitalization and other outpatient services); inpatient facility; physician visit to hospital, behavioral health facility or residential treatment center; toxicology and clinical laboratory testing and screening; and inpatient detoxification.

56.     The insurance policies issued and/or administered by Defendants, and each of them, provide for the payment of services with an INP at 100% of the provider's billed charges set by contract, less the insured's co-pay, co-insurance and deductible.  Services with an ONP are reimbursed at a lesser percentage of the provider's billed charges.

57.     The insurance policies issued and/or administered by Defendants, and each of them, provide that Defendants were required to remit claim payments directly to providers when

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  the insured assigns his or her benefits to the provider in writing, and Defendants, and each of

2  them, confirmed this during the verification of benefits process.

3      58.    When required by the insurance policies issued and/or administered by Defendants,

4  and each of them, Plaintiff's standard operating procedure was to obtain prior authorization for

5  alcoholism and substance use disorder treatment and laboratory services for Defendants'

6  insureds/members.  Plaintiff's standard operating procedure also included obtaining a verification

7  of benefits from the patient's insurance company, including Defendants, to ensure the patient is

8  covered by the insurer and that the treatment is a covered benefit under the policy.

9      59.    In communication with Plaintiff, including telephone calls requesting verification

10  of benefits, Defendants, and each of them, represented to Plaintiff that the services provided to

11  Defendants' insureds/members would be reimbursed at 70% of covered charges (minus any cost-

12  sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants

13  pay 100%.

14      60.    Specifically, for each of the 31 patients whose substance use disorder and mental

15  health treatment and laboratory services are at issue, Plaintiff contacted Defendants by phone

16  and/or in writing before beginning such treatments and services.  Plaintiff learned that the patients,

17  and each of them, were validly covered by their policies with Defendants, and Plaintiff informed

18  Defendants of the proposed treatments and services of Defendants' insureds/members, including

19  the specific services to be provided and the billing codes for the same.  Plaintiff informed

20  Defendants to the effect that Plaintiff would agree to accept the maximum allowable fee under

21  those polices for Plaintiff's services, which fee is equal to 70% of covered charges (minus and

22  cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time

23  Defendants pay 100%.  Defendants agreed to such terms, after which Plaintiff began treating

24  Defendants' insureds/members.

25      61.    Based upon the language of the insurance policies issued and/or administered by

26  Defendants, and each of them, and upon obtaining required prior authorization and verification of

27  benefits when necessary, and valid written assignments, Plaintiff and its patients insured by

28  Defendants and/or with policies administered by Defendants, reasonably expected that Plaintiff's

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 21 -

COMPLAINT

1    claims would be paid promptly and consistent with the law and the terms of the policies and/or the

2    herein representations made by Defendants, and each of them, to Plaintiff.

3        62.    Notwithstanding the required prior authorization and/or verification of benefits

4    when necessary, and valid written assignments, Plaintiff's claims for the majority of substance use

5    disorder treatment and laboratory services provided to Defendants' insureds/members have not

6    been paid properly and require substantial interest payments for violation of the applicable

7    insurance policies and California insurance and managed health care laws providing for the

8    prompt payment of claims.

9        63.    Plaintiff is entitled to payment for its substance use disorder and mental health

10   treatment and laboratory services rendered to Defendants' insureds/members at the proper

11   reimbursement rates, pursuant to valid written assignments from its patients or, at a minimum,

12   under a theory of quantum meruit.

13       64.    While Defendants' breaches alleged herein involved policies issued and/or

14   administered by one or more of the Defendants, each Defendant, upon information and belief,

15   conceived, directed, approved, or aided and abetted the others in this bad faith scheme.

16       65.    In California, a health insurer must provide or arrange for the provision of access to

17   health care services in a timely manner.  Most health insurers, including Defendants, and each of

18   them, seek to satisfy this duty by providing an adequate network of INPs for their insureds to

19   choose from so they may receive the necessary treatment at the lowest expense to the insurer and

20   the insured.

21       66.    A "network gap" or "network insufficiency" exists in a health insurer's network

22   when either the health insurer, or the patient, is unable to secure the services of an INP for

23   necessary treatment.  If a network gap exists, California law requires the insurer to secure the

24   services of an ONP so the insurer can meet its legal and contractual obligations to provide or

25   arrange for the provision of access to health care services in a timely manner.  In addition,

26   emergency services, and sometimes urgently needed services, must be covered by an insurer with

27   an ONP if the insurer has no network provider to provide the needed services.

28

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

67. California law does not give a health insurer the right or ability to unilaterally set the price it will pay an ONP that provides services to one of the insurer's insureds in order to fill a network gap.

68. Upon information and belief, there was a network gap with respect to substance use disorder treatment providers and clinical laboratories in California to serve the tremendous number of Defendants' insureds/members needing such treatment and services, due in large part to the opioid and addiction epidemic in California, and across the nation.

69. Upon information and belief, there was a network gap with respect to substance use disorder treatment centers and clinical laboratories required to treat Defendants' insureds/members, which caused some of Defendants' insureds/members to obtain the services of Plaintiff, an ONP.

70. In the managed health care industry, a "verification" of an insured's coverage for the contemplated treatment, or an "authorization" for such treatment, is understood by both the insurers and providers to be an agreement by the insurers to pay for such treatment. For INPs, it is an agreement by the insurers to pay those providers based on previously negotiated rates between the insurer and those providers. For ONPs, it is an agreement by the insurers to pay those providers at their fully billed charges.

71. Plaintiff, as an ONP, after obtaining preauthorization and/or verification of coverage when necessary, provided necessary treatment and services to Defendants' insureds/members due to a network gap and is therefore entitled to recover payment for its services at its fully billed charges.

72. While Plaintiff has repeatedly demanded payment in full for the services provided to Defendants' insureds/members, Defendants, and each of them, have denied, delayed and incorrectly issued payment for Plaintiff's claims even after requested records were copied, sent and received by Defendants.

73. Defendants, and each of them, would respond to Plaintiff's inquiries about the delay or errors in payment with false promises that payment would be made and/or a multitude of excuses. Regardless of the excuses made by Defendants, and each of them, Plaintiff did not

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   receive proper claim payments for the substance use disorder and mental health treatment and

2   laboratory services provided to Defendants' insureds/members.

3       74.   Upon information and belief, Defendants, and each of them, realized an immediate

4   positive financial impact as a result of their misconduct alleged herein, cessation substance use

5   disorder treatment and laboratory claims payments, and forcing treatment centers and laboratory

6   providers, like Plaintiff, through an expensive, administratively burdensome and indiscriminate

7   audit, and not paying claims that are due and owing under the policies and the law.

8       75.   Upon information and belief, Defendants, and each of them, undertook the actions

9   alleged herein with the intent and designed purpose of not paying substance use disorder treatment

10  and laboratory claims that are due and owing under the law and the policies, as part of a pattern

11  and practice by Defendants, and each of them, that is unlawful, unfair and fraudulent, and thus

12  violates, *inter alia*, California's UCL, state and federal regulations and the MHPAEA and

13  PPACA.

14      76.   Upon information and belief, Defendants, and each of them, undertook the actions

15  alleged herein, in violation of numerous provisions of California's UIPA, without limitation,

16  numerous subsections of California Insurance Code section 790.03, including misrepresentations

17  to patients and providers, failing to acknowledge and act reasonably promptly in response to

18  communications, failing to adopt and implement reasonable standards for investigations, not

19  attempting in good faith to effectuate prompt, fair and equitable settlement of claims, and

20  compelling providers to institute litigation to recover policy benefits owed.

21      77.   Upon information and belief, Defendants, and each of them, developed a

22  mechanism through their superior economic might to oppress treatment centers and laboratories,

23  including Plaintiff, forcing Plaintiff and other treatment centers and laboratories into a position

24  where they can no longer afford to accept patients insured by Defendants and/or with policies

25  administered by Defendants, and resulting in significant and undue hardship to Plaintiff (and the

26  patient-insureds) and interference with Plaintiff's contractual relationships with its patients and its

27  prospective economic advantage.  And Defendants, and each of them, are is doing this in the

28  middle of an opioid and addiction epidemic!

- 24 -
COMPLAINT

**FIRST CAUSE OF ACTION**

**Breach of Written Contract**

**Against All Defendants**

78.     Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

79.     Plaintiff provided verified, preauthorized and covered substance use disorder and mental health treatment and laboratory services to 31 individuals with health insurance that was sold, insured and/or administered by Defendants.  The policies pay benefits for out-of-network substance use disorder and mental health treatment, including, but not limited to, detoxification and residential treatment, PHP, IOP, OP, counseling and behavioral therapies, and clinical laboratory services, at 70% of covered charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.  Plaintiff confirmed with Defendants through the required verification of benefits process and, if necessary, the preauthorization process, that each of the patient-insureds and their respective treatments were covered by health insurance policies issued and/or administered by Defendants.  At all times relevant herein, Defendants knew that Plaintiff was treating, and would continue to treat, Defendants' insureds/members, and that Plaintiff was not treating Defendants' insureds/members for free.

80.     As a condition of providing such treatment and services, Plaintiff obtained a written assignment of benefits from each of the 31 patient-insureds at issue, by which Defendants' insureds/members intended to, and did, assign to Plaintiff not only rights to payment of claims but to assert all rights and causes of action against Defendants in connection with such claims.  As assignee of the patients' benefits under the policies, Plaintiff is entitled to be paid for the services rendered based on the existence and terms of the insurance policies that cover the patients.  Each of policies at issue herein provide for the same coverages, reimbursement rates and coinsurance percentages, deductibles and out-of-pocket maximums.

81.     The policies provide in relevant part that benefits are payable for the covered substance use disorder and mental health treatment and laboratory services provided by Plaintiff to

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

Defendants insureds/members, and subject to specific conditions, exclusions and limitations, none of which apply, and applicable maximum reimbursement amounts.  As stated herein, benefits for a covered expense for covered services, including mental health and substance use disorder treatment and laboratory services, are paid at 70% of the billed charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.

82.     After providing covered substance use disorder and mental health treatment and laboratory services to Defendants' insureds/members, Plaintiff submitted claims for reimbursement to Defendants pursuant to the terms of Defendants' policies.  Defendants were obligated to pay Plaintiff 70% of its billed charges (minus any cost-sharing amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%.  Instead, Defendants paid Plaintiff a mere 20.28% of the covered expenses for the claims.

83.     Plaintiff is also an express and intended third-party beneficiary of the written contracts (the policies) between Defendants and the insured patients treated by Plaintiff, and is entitled to recover on that basis.

84.     Defendants and their insureds intended that Plaintiff directly benefit from the contracts and the contracts indicate the intent to benefit Plaintiff by payment for the services provided to Defendants' insureds.

85.     The policies issued and/or administered by Defendants provide their insureds/members the option of seeking treatment and services with Defendants' INPs or choosing their own ONPs, like Plaintiff.  The policies also specifically provide for the payment of benefits for ONPs, like Plaintiff, who provide medically necessary services; and Defendants confirmed the out-of-network benefits that Defendants pay to out-of-network providers, like plaintiff, at all levels of care.  Although the policies issued and/or administered by Defendants may incentivize their insureds to seek treatment with INPs, those policies explicitly express Defendants' intent to benefit ONPs, like Plaintiff.

86.     The policies issued and/or administered by Defendants further express Defendants' intent to benefit ONPs, like Plaintiff, insofar as the policies expressly incorporate by reference California regulations requiring insurers, like Defendants, to provide an adequate network of INPs

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 26 -

COMPLAINT

and, in the event of a "network inadequacy" or "network gap," requiring insurers, like Defendants, to pay for the required care with available and accessible ONPs, like Plaintiff,  with the patient responsible for paying only cost-sharing in an amount equal to the cost-sharing they would have paid for provision of that or a similar service by an INP (Cal. Code Regs. tit. 10, § 2240.1(e)).

87.     Defendants' intent to benefit ONPs, like Plaintiff, by the terms of the insurance policies is further evidenced by the conduct of the Defendants, who issued payments to ONPs, including Plaintiff, for the medically necessary services rendered to their insureds, in accordance with the terms of the policies, until in or around 2015, when the Defendants, as part of their scheme to decrease their costs on substance use disorder and mental health treatment claims and laboratory services, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder treatment and laboratory services, including Plaintiff.

88.     Plaintiff provided covered, verified, preauthorized and necessary substance use disorder and mental health treatment and laboratory services to Defendants' insureds/members at great expense to Plaintiff.  After providing those services, Plaintiff submitted its claims to Defendants, requesting compensation for the care and treatment provided to the patient-insureds, and complied with all terms and conditions of the policies.

89.     Defendants, and each of them, however, failed and refused to comply with their obligations under the law and the policies and either paid no or inadequate benefits for the substance use disorder and mental health treatment and laboratory services that Plaintiff provided to Defendants' insureds/members.

90.     Upon information and belief, there is no legally operative term in the policies that would justify Defendants' failure to pay the full benefits owed to Plaintiff for the substance use disorder and mental health treatment and laboratory services that Plaintiff provided to Defendants' insureds/members in good faith.

91.     Plaintiff has performed all duties required of it under the insurance policies, except as excused by Defendants' material breaches.

COMPLAINT

92.    Defendants, and each of them, however, breached the insurance policies by the conduct alleged herein, including without limitation withholding of proper claim payments, making unreasonable demands on Plaintiff, not engaging in a prompt, full and complete investigation of Plaintiff's claims, and interpreting the policies in an unduly restrictive manner so as to deny coverage and benefits when, in fact, coverage exists and benefits are owed.

93.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and continues to suffer general and incidental damages according to proof, and is entitled to statutory and prejudgment interest and attorney's fees against Defendants, and each of them.  Under this cause of action, Plaintiff seeks to recover the benefits payable under the policies between the patients and Defendants, or equal to approximately 70% of Plaintiff's billed charges (minus any cost-sharing amounts) until the subject deductibles/out-of-pocket maximums are met at which time Defendants pay and 100%.

94.    As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and continues to incur economic loss, including the benefits owed in the millions, the interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences, all according to proof.  Plaintiff is also entitled to statutory and prejudgment interest against Defendants.

## SECOND CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

### Against All Defendants

95.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs above as if fully set forth herein.

96.    As alleged herein, Plaintiff is an assignee and intended beneficiary of its patients' policies issued and/or administered by Defendants and the rights conferred thereunder.

97.    Each policy contains an implied covenant of good faith and fair dealing that obligates each party to do nothing to injure the right of the other party to receive the benefits of the agreement.

98.    Plaintiff provided covered, verified, preauthorized and necessary substance use disorder and mental health treatment and laboratory services to Defendants' insureds/members

- 28 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  with the understanding and expectation that Defendants would act in good faith and deal fairly

2  with Plaintiff pursuant to the policies and the law.

3       99.    Defendants, and each of them, however, tortuously breached the policies and the

4  implied covenant of good faith and fair dealing by the conduct alleged herein, including without

5  limitation withholding of proper claim payments from Plaintiff, making unreasonable demands on

6  Plaintiff, not engaging in a prompt, full and complete investigation of Plaintiff's claims, and

7  interpreting the policies in an unduly restrictive manner so as to deny coverage and benefits when,

8  in fact, coverage exists and benefits are owed to Plaintiff, fraudulently representing to Plaintiff that

9  Defendants would pay the claims in accordance with the policies, fraudulently misrepresenting the

10  terms of the policies, and forcing Plaintiff to initiate litigation to recover the policy benefits owed,

11  failing to abide by the rules and regulations promulgated by the CDI and the DMHC, and by other

12  acts and omissions of which Plaintiff is presently unaware and which will be shown according to

13  proof at the time of trial.

14       100.    Upon information and belief, the conduct of Defendants, and each of them, as

15  alleged herein constitutes part of an institutional illegal pattern and practice of bad faith and

16  unlawful insurance practices by Defendants, and each of them.

17       101.    Defendants' conduct constitutes a continuing tort that is causing Plaintiff continued

18  damages.

19       102.    The conduct of Defendants as alleged herein was undertaken by Defendants'

20  officers, directors or managing agents who were responsible for supervision, operation, reports,

21  communication and decisions in connection with the coverage, access, claims and benefits at issue

22  herein.  The conduct of said officers, directors and managing agents, and of other employees,

23  representatives and agents, was undertaken on behalf of Defendants, which had advance

24  knowledge of the action and conduct of said individuals whose conduct and actions were

25  authorized, ratified and approved by officers, directors or managing agents of Defendants, and

26  each of them.

27       103.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and

28  continues to suffer general and incidental damages according to proof, and is entitled to statutory

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 29 -

COMPLAINT

1  and prejudgment interest against Defendants, and each of them. Under this cause of action,

2  Plaintiff seeks to recover the benefits payable under the policies between the patients and

3  Defendants, or equal to approximately 70% of covered expenses (minus any cost-sharing

4  amounts) until the deductible/out-of-pocket maximum is met at which time Defendants pay 100%,

5  as well as tort damages that arise from Defendants' bad faith breaches.

6      104.    As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and

7  continues to incur economic loss, including the benefits owed in the millions, the interruption in

8  Plaintiff's business, lost business opportunities, lost profits and other consequences, all according

9  to proof.

10     105.    As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and

11 continues to incur attorney's fees and costs as a result of efforts to secure the insurance benefits

12 owed, in an amount according to proof.

**THIRD CAUSE OF ACTION**

**Breach of Implied Contract**

**Against All Defendants**

16     106.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs

17 above as if fully set forth herein.

18     107.    Plaintiff, as an ONP, provided substance use disorder and mental health treatment

19 and laboratory services to patients who were insured under insurance policies issued and/or

20 administered by Defendants, and each of them, preceded by authorization and verification of

21 benefits by Defendants.

22     108.    Consistent with the trade custom and usage associated with prior authorization and

23 verification of benefits, Plaintiff provided the subject treatment and services with the expectation,

24 which was fully and clearly understood by Defendants, and each of them, that Plaintiff would be

25 compensated for such services. Defendants knew at all times that Plaintiff was not treating

26 Defendants insureds/members for free.

27     109.    Plaintiff, as an ONP, must often decide on short notice whether and to what extent

28 it can treat a patient. Requiring such providers to, in effect, make an on-the-spot legal analysis

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

- 30 -

COMPLAINT

whether the statements made by health care plans to authorize treatment and verify benefits constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would jeopardize the safety of patients, and impose an unfair risk on health care providers that they would not get paid for providing treatment and services that are medically necessary.  For this reason, the California Legislature enacted Health & Safety Code section 1371.8, which states in relevant part:

> A health care service plan that authorizes a specific type of treatment by a provider **shall not rescind or modify this authorization after the provider renders the health care service** in good faith and pursuant to the authorization for any reason, including, but not limited to, the plan's subsequent rescission, cancellation, or modification of the enrollee's or subscriber's contract or the plan's subsequent determination that it did not make an accurate determination of the enrollee's or subscriber's eligibility…. (Emphasis added.)

110.    In addition to reliance upon the trade custom and usage associated with prior authorization and verification of benefits, Plaintiff provided the subject treatment and services with the expectation that Plaintiff would be compensated for such services based upon the prior course of conduct of Defendants, and each of them, and Defendants confirmed this with Plaintiff during the verification of benefits process for each of the treatment insureds/members at issue herein.

111.    Defendants, and each of them, were fully aware of the dollar amounts charged by Plaintiff for the subject treatment and services and had previously authorized, verified and confirmed the benefits payable to Plaintiff for such treatment and services.  Defendants, and each of them, were also aware that Plaintiff did not provide the subject treatment and services for free, and that Plaintiff would submit its billed charges for said services and expect to be compensated. Defendants, and each of them, also knew Plaintiff was not a contracted in-network provider who had agreed to accept any pre-negotiated contract rates.  With such knowledge, Defendants, and each of them, issued payments for the subject treatment to ONPs, including Plaintiff.

112.    Whereas payment by Defendants, and each of them ,was always sporadic and often inadequate, in or around 2015, and as part of their scheme to decrease their costs of substance use

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

disorder and mental health treatment and laboratory claims, Defendants, and each of them, conspired, concocted and implemented their plans to significantly decrease, and in some cases completely ceased reimbursing, ONPs providing substance use disorder treatment and laboratory services, including Plaintiff.

113.    Accordingly, by virtue of Defendants, and each of them, authorizing, verifying and confirming the benefits for the subject treatment provided by Plaintiff; by the trade custom and usage associated with prior authorization and verification of benefits; and by Defendants' prior course of conduct and confirmations, the parties thus created an implied contract, through words and conduct, that Defendants, and each of them, would pay Plaintiff for treatment and services rendered to Defendants' insureds/members, for the reasonable value of such treatment and services.

114.    Defendants are also liable to pay Plaintiff for treating the 31 patients and the claims at issue due to a contract implied in law based on the network gap concept as discussed hereinabove.  California law requires that where health insurance carriers such as Defendants cannot provide their insureds/members access to the needed health care providers on an "in-network" basis, the carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit the out-of-pocket cost to the patient as if an in-networker provider had provided the same treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost 100 percent of its fully-billed charges (since the patients would be responsible for only their relatively nominal co-payments), or in any case substantially more than the contracted rates agreed to by an in-network provider.

115.    Upon information and belief, there was a network gap with respect to the 31 patients payments for whom are at issue in this action, since Defendants failed to arrange for any in-network providers in the patients' localities who were willing and able to provide the substance use disorder treatment and laboratory services required by those patients.  Indeed, if Defendants objected to their insureds/members obtaining treatment from an ONP such as Plaintiff, why did they refuse or otherwise fail to refer those patients to an INP?  The only reasonable inference is that there were no such INP's who were in the position to treat the patients at issue.  As a result,

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   those patients had no choice but to seek the services and treatments rendered by Plaintiff, who did

2   so in good faith and in reliance on Defendants' expected compliance with the applicable California

3   health care law as it pertains to a "network gap."

4        116.    Plaintiff has performed all duties required of it under the implied contract, except as

5   excused by Defendants' material breaches.

6        117.    Defendants, and each of them, however, breached the implied contract by the

7   conduct alleged herein, including without limitation the withholding of proper claim payments.

8        118.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and

9   continues to suffer general and incidental damages according to proof, and is entitled to statutory

10  and prejudgment interest and attorney's fees against Defendants.  In this cause of action, Plaintiff

11  is seeking to recover reimbursements regardless of what the policies between Defendants and their

12  insureds/members would have provided for the same treatments and services; namely, the

13  reasonable value of such services and treatments, and/or the payments owing to Plaintiff under

14  California law based on the existence of a "network gap" as to some or all of the 31 patients at

15  issue.

16       119.    As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and

17  continues to incur economic loss, including the benefits owed in millions, the interruption in

18  Plaintiff's business, lost business opportunities, lost profits and other consequences, all according

19  to proof.

20  **FOURTH CAUSE OF ACTION**

21  **Breach of Oral Contract**

22  **Against All Defendants**

23       120.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs

24  above as if fully set forth herein.

25       121.    As part of verifying benefits and authorizing treatment when necessary, and in

26  multiple communications following admissions and the submission of claims, Defendants, and

27  each of them, confirmed and orally promised to pay Plaintiff for the substance use disorder and

28  mental health treatment and laboratory services provided to Defendants' insureds/members on the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  same terms as provided for in the policies between Defendants and their insureds/members;

2  specifically, payments to Plaintiff equal to approximately 70% of covered expenses (minus any

3  cost-sharing amounts) until the subject deductibles/out-of-pocket maximums are met at which

4  time Defendants pay 100%.

5       122.    The persons answering calls and corresponding on behalf of Defendants, and each

6  of them, were upon information and belief the agents and employees of Defendants, and each of

7  them, and in doing the things herein alleged were acting within the course and scope of such

8  agency and employment and with the permission and consent of Defendants, and each of them.

9       123.    Plaintiff has performed all duties required of it under the oral contract, except as

10  excused by Defendants' material breaches.

11       124.    Defendants and each of them, however, breached the oral contract by the conduct

12  alleged herein, including without limitation the withholding of proper claim payments.

13       125.    As a direct and proximate result of Defendants' breaches, Plaintiff has suffered and

14  continues to suffer general and incidental damages according to proof, and is entitled to statutory

15  and prejudgment interest and attorney's fees against Defendants.  Under this cause of action,

16  Plaintiff seeks to recover the benefits orally promised, which are equal to approximately 70% of

17  covered expenses (minus any cost-sharing amounts) until the subject deductibles/out-of-pocket

18  maximums are met at which time Defendants pay 100%.

19       126.    As a direct and proximate result of Defendants' breaches, Plaintiff has incurred and

20  continues to incur economic loss, including the benefits owed in the millions, the interruption in

21  Plaintiff's business, lost business opportunities, lost profits and other consequences, all according

22  to proof.

23  **FIFTH CAUSE OF ACTION**

24  **Promissory Estoppel**

25  **Against All Defendants**

26       127.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs

27  above as if fully set forth herein.

28       128.    As part of verifying benefits and authorizing the substance use disorder treatment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1  and laboratory services when necessary, and in multiple communications following admissions

2  and the submission of claims, Defendants confirmed and expressed a clear promise to pay Plaintiff

3  on the same terms as provided for in the policies between Defendants and their insureds/members;

4  specifically, payments to Plaintiff equal to approximately 70% of covered expenses (minus any

5  cost-sharing amounts) until the subject deductibles/out-of-pocket maximums are met at which

6  time Defendants pay 100%.

7       129.    The persons answering calls and corresponding on behalf of Defendants, and each

8  of them, were upon information and belief the agents and employees of Defendants, and each of

9  them, and in doing the things herein alleged were acting within the course and scope of such

10  agency and employment and with the permission and consent of Defendants, and each of them.

11       130.    Plaintiff relied on Defendants' promises in providing substance use disorder

12  treatment and laboratory services to Defendants' insureds/members, and Defendants, and each of

13  them, should reasonably have expected to induce Plaintiff's action in providing said treatment and

14  services.

15       131.    Plaintiff has suffered substantial detriment in reliance upon Defendants' promises

16  in providing substance use disorder and mental health treatment and laboratory services to

17  Defendants' insureds/member, including without limitation the benefits owed in the millions, the

18  interruption in Plaintiff's business, lost business opportunities, lost profits and other consequences,

19  all according to proof.

20       132.    As a direct and proximate result of Defendants' breaches of their promises, Plaintiff

21  is also entitled to statutory and prejudgment interest and attorney's fees against Defendants, and

22  each of them.

23                          **SIXTH CAUSE OF ACTION**

24                              **Quantum Meruit**

25                             **Against All Defendants**

26       133.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs

27  above as if fully set forth herein.

28       134.    Plaintiff, as an ONP, provided substance use disorder and mental health treatment

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   and laboratory services for patients who were insured under insurance policies issued and/or

2   administered by Defendants, and each of them, preceded by authorization, confirmation and

3   verification of benefits by Defendants.

4        135.    Consistent with the trade custom and usage associated with prior authorization,

5   confirmation and verification of benefits, Plaintiff provided the subject substance use disorder and

6   mental health treatment and laboratory services to Defendants' insures/members with the

7   expectation, which was fully and clearly understood by Defendants, and each of them, that

8   Plaintiff would be compensated for such treatment and services provided to Defendants'

9   insureds/members.

10        136.    Plaintiff, as an ONP, must often decide on short notice whether and to what extent

11   it can treat a patient.  Requiring such providers to, in effect, make an on-the-spot legal analysis

12   whether the statements made by health care plans to authorize treatment and verify benefits

13   constitute binding contract "acceptances" versus supposedly non-binding "authorizations" would

14   jeopardize the safety of patients, and impose an unfair risk on health care providers that they

15   would not get paid for providing treatments that are medically necessary.  For this reason, the

16   California Legislature enacted Health & Safety Code section 1371.8, which states in relevant part:

17                 A health care service plan that authorizes a specific type of
              treatment by a provider **shall not rescind or modify this**
18                 **authorization after the provider renders the health care service**
              in good faith and pursuant to the authorization for any reason,
19                 including, but not limited to, the plan's subsequent rescission,
              cancellation, or modification of the enrollee's or subscriber's
20                 contract or the plan's subsequent determination that it did not make
              an accurate determination of the enrollee's or subscriber's
21                 eligibility…. (Emphasis added.)

22

23        137.    In addition to reliance upon the trade custom and usage associated with prior

24   authorization, confirmation and verification of benefits, Plaintiff provided the subject treatment

25   and services to Defendants' insureds/members with the expectation that Plaintiff would be

26   compensated for such treatment and services based upon the prior course of conduct between

27   Plaintiff and Defendants, and each of them.

28        138.    Defendants, and each of them, were fully aware of the dollar amounts charged by

- 36 -

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    Plaintiff for the subject treatment and services and had previously authorized, confirmed and

2    verified benefits for such treatment and services.  Defendants, and each of them, were also aware

3    that Plaintiff did not provide the subject treatment and services for free, and that Plaintiff would

4    submit its billed charges for said treatment and services and expect to be compensated.

5    Defendants, and each of them, also knew Plaintiff was not a contracted in-network provider who

6    had agreed to accept any pre-negotiated contract rates.  With such knowledge, Defendants, and

7    each of them, issued payments for the subject treatment and services to ONPs, including Plaintiff.

8         139.    Whereas payment by Defendants, and each of them, was always sporadic and often

9    inadequate, in or around 2015, and as part of their scheme to decrease their costs of substance use

10   disorder and mental health treatment and laboratory claims, Defendants, and each of them,

11   conspired, concocted and implemented their plans to significantly decrease, and in some cases

12   completely ceased reimbursing, ONPs providing substance use disorder treatment and laboratory

13   services, including Plaintiff.

14        140.    Defendants, and each of them, were at all times obligated under California law to

15   provide or arrange for the provision of access for their insureds to health care services in a timely

16   manner, and sought to satisfy this duty by providing a network of INPs for their insureds to choose

17   from so they may receive the necessary treatment and services at the lowest expense to the insurer

18   and the insured.

19        141.    Defendants are also liable to pay Plaintiff for treating the 31 patients and claims at

20   issue due to a contract implied in law based on the network gap concept as discussed hereinabove.

21   California law requires that where health insurance carriers such as Defendants cannot provide

22   their insureds/members access to the needed health care providers on an "in-network" basis, the

23   carriers shall pay any "out-of-network" provider such as Plaintiff the amounts necessary to limit

24   the out-of-pocket cost to the patient as if an in-networker provider had provided the same

25   treatment and services.  In effect, this makes an out-of-network provider eligible to receive almost

26   100 percent of its fully-billed charges (since the patients would be responsible for only their

27   relatively nominal co-payments), or in any case substantially more than the contracted rates agreed

28   to by an in-network provider.

142. Upon information and belief, there was a network gap with respect to the 31 patients payments for whom are at issue in this action, since Defendants failed to arrange for any in-network providers in the patients' localities who were willing and able to provide the substance use disorder treatment and laboratory services required by those patients. Indeed, if Defendants objected to their insureds/members obtaining treatment from an ONP such as Plaintiff, why did they refuse or otherwise fail to refer those patients to an INP? The only reasonable inference is that there were no such INP's who were in the position to treat the patients at issue. As a result, those patients had no choice but to seek the treatment and services rendered by Plaintiff, who did so in good faith and in reliance on Defendants' expected compliance with the applicable California health care law as it pertains to a "network gap."

143. Defendants, and each of them, by words and conduct, requested that Plaintiff provide medically necessary substance use disorder treatment and laboratory services to their insureds/members, which benefitted Defendants in terms of meeting their legal and contractual obligations to provide or arrange for the provision of access to health care services in a timely manner.

144. As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants, and each of them, knew that Plaintiff was providing substance use disorder treatment and laboratory services to Defendants' insureds/members and promised to pay Plaintiff for the treatment and services and thereafter enjoyed the benefit of Plaintiff providing the services Defendants were obligated to ensure for their insureds/members.

145. The persons answering calls and corresponding on behalf of Defendants, and each of them, were upon information and belief the agents and employees of Defendants, and each of them, and in doing the things herein alleged were acting within the course and scope of such agency and employment and with the permission and consent of Defendants, and each of them.

146. Plaintiff is entitled to be paid the reasonable and customary fees for the substance use disorder and mental health treatment and laboratory services provided to Defendants' insureds/members, without regard to the payment provisions in Defendant's policies and/or the

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1    payments owing to Plaintiff under California law based on the existence of a "network gap" as to

2    some or all of the 31 patients at issue.

3        147.    The fair and reasonable value of the non-reimbursed treatment and services that

4    Plaintiff provided to Defendants' insureds/members is in the millions.

5        148.    Defendants, and each of them, however, have failed and refused, and continue to

6    refuse, to reimburse Plaintiff for the reasonable and customary value of Plaintiff's services as

7    required by law.

8        149.    As a direct and proximate result of Defendants' failure to pay for services rendered,

9    Plaintiff has suffered and continues to suffer general and incidental damages according to proof,

10   and is entitled to statutory and prejudgment interest and attorney's fees against Defendants, and

11   each of them.

12       150.    As a direct and proximate result of Defendants' failure to pay for the treatment and

13   services rendered to Defendants' insureds/members, Plaintiff has incurred and continues to incur

14   economic loss, including the benefits owed in the millions, the interruption in Plaintiff's business,

15   lost business opportunities, lost profits and other consequences, all according to proof.

16                          **SEVENTH CAUSE OF ACTION**

17                               **Unfair Competition**

18                              **Against All Defendants**

19       151.    Plaintiff incorporates by reference all allegations set forth in each of the paragraphs

20   above as if fully set forth herein.

21       152.    The conduct of Defendants, and each of them, as alleged herein not only constitutes

22   common law bad faith, but also violates state and federal law, regulations and policies, and thus

23   constitutes unlawful, unfair, and fraudulent business practices in violation of the UCL (Bus. &

24   Prof. Code §§ 17200 et seq.).

25       153.    Plaintiff has suffered injury in fact and has lost money or property as a result of

26   acts of unfair competition by Defendants, and each of them, as alleged herein.

27       154.    Plaintiff is entitled to injunctive relief under the UCL and, as such, Plaintiff seeks a

28   temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM

1   Defendants, and each of them, from unjustifiably withholding proper payment of claims.

2       155.    Plaintiff is further entitled to an order appointing a receiver over Defendants, and

3   each of them, and restoring to Plaintiff any money or property that was acquired through the

4   foregoing acts of unfair competition (Cal. Bus. & Prof. Code § 17203).

5   ## PRAYER

6       **WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, and

7   that the Court award the following relief:

8       1.    For compensatory, general and special damages in amounts to be proven at trial;

9       2.    For statutory and prejudgment interest;

10      3.    For costs incurred in connection with this lawsuit;

11      4.    For attorney's fees;

12      5.    For injunctive and equitable relief; and

13      6.    For all other relief the Court deems just and proper.

16  ## DEMAND FOR JURY TRIAL

17      Plaintiff DR Recovery Encinitas, LLC hereby requests a trial by jury for all claims triable

18  by jury.

19  Dated:  December 31, 2019            **CALLAHAN & BLAINE, APLC**

21                              By: _____
                                    Daniel J. Callahan
22                                  Edward Susolik
                                    Richard T. Collins
23                                  Damon D. Eisenbrey
                                    Adrian L. Canzoneri
24                                  Attorneys for Plaintiff DR Recovery Encinitas,
                                    LLC

CALLAHAN & BLAINE
A PROFESSIONAL LAW CORPORATION
3 HUTTON CENTRE DRIVE, NINTH FLOOR
SANTA ANA, CALIFORNIA 92707
TELEPHONE: (714) 241-4444
WWW.CALLAHAN-LAW.COM